IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER JERMAINE CRAIG,** | ] | |
| | ] | |
| Petitioner, | ] | |
| | ] | |
| v. | ] | **2:14-cv-08027-KOB** |
| | ] | **2:11-cr-00296-KOB** |
| **UNITED STATES OF AMERICA,** | ] | |
| | ] | |
| Respondent. | ] | |

**MEMORANDUM OPINION**

On February 14, 2012, after a two-day trial, a jury convicted Christopher Jermaine Craig of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The court sentenced Mr. Craig to 70 months in custody. Mr. Craig filed this motion to vacate, set aside, or correct his sentence. (Civ. Doc. 1).[1] A prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court . . . to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Mr. Craig's motion asserts that he received ineffective assistance of counsel: (1) at trial, based on counsel's failure to object to his retrial as a violation of the Double Jeopardy Clause of the Fifth Amendment; (2) at sentencing, based on counsel's failure to properly investigate and object to the calculation of his advisory sentencing guidelines range; and (3) on appeal, based on counsel's failure to raise a number of issues that Mr. Craig wanted counsel to raise. The court finds that the motion is due to be **DENIED**.

---

[1] Documents from Mr. Craig's criminal trial, case number 2:11-cr-296, are designated "Cr. Doc. __."

1

## I. BACKGROUND

On July 26, 2011, Mr. Craig was indicted on one count of violating 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm. At Mr. Craig's first trial in January 2012, Assistant Federal Public Defender Glennon Threatt represented him. That trial ended in a mistrial. An ATF agent and Birmingham city police officers, within sight of some of the jurors, had detained Johnetta Jackson—Mr. Craig's cousin and a defense witness who had just testified—and Mr. Craig's brother. The agent and officers then arrested Ms. Jackson (but not Mr. Craig's brother) because she had at least one outstanding warrant for her arrest. Officers handcuffed Ms. Jackson in front of the courthouse and then drove her away in a patrol car. When questioned later about the incident, none of the jurors admitted having seen her handcuffed or driven away.

Following this incident, the court met with defense attorney Mr. Threatt, and the prosecutor, Enid Athanas, in chambers, where the following discussion took place.

> THE COURT: I understand we may have had an incident on the courthouse steps.
>
> MR. THREATT: I am livid about this. This is what I understand happened. After Ms. Jackson testified, she was leaving the building and Agent Tucker asked one of our jurors to stop her, the juror called out Ms. Jackson's name and then she was arrested. Now, by the time I got downstairs, she was in handcuffs less than ten feet from the entrance of this building. In addition to that, his brother was also detained by Birmingham Police but he was not arrested.
>
> MS. ATHANAS: I understood he had warrants outstanding, and there was another potential witness who had warrants outstanding. Once they left the courthouse grounds, they would be arrested because they had outstanding warrants. First of all, my belief was that we would all be up here in the courtroom, jurors included, that that would occur outside the presence of any sort of jurors at all. Second of all, I can't

2

even fathom that Ms. Tucker would have, I mean, I can't even believe that this happened. That is unbelievable to me that that occurred. And if it did, it's horrifying.

THE COURT: I agree. A juror was asked to stop her.

MR. THREATT: Yes.

THE COURT: Do you know which juror?

MR. THREATT: My client's brother and his wife were with Ms. Jackson and saw the juror and believe they can identify them.

THE COURT: Do they know which one?

MR. THREATT: They could identify the juror. I could ask them to describe them, if Your Honor wants. I am moving for a mistrial. I don't know why the police didn't tell your courtroom -- I could understand them not telling you. I don't understand courtroom staff not knowing to keep the jury in the jury room until such time as they got a call that they could be released. Even that is hindsight.

MS. ATHANAS: I apologize. Like I said, I understood that once she left the courthouse, and Sandra said, we can't -- Ms. Tucker, of course, she said, we don't, you know, these people have warrants, we have to, we have to have them arrested, but we won't do it in the courthouse, we couldn't do it in the courthouse. But I will get her outside the courthouse.

THE COURT: Was this like on the courthouse steps?

MR. THREATT: Less than ten feet from entrance to the building. I saw that. I went downstairs and she was standing in handcuffs within arm's reach of the door. And there were two, both of the officers who testified on the case and Agent Tucker.

MS. ATHANAS: Obviously, I had no idea that it was going to go down that way. I had no input. They did not obviously ask me how they were suppose to arrest someone. We didn't discuss it. I just assume that Sandra knew better than to do that, quite frankly, because we have had this whole conversation. I mean, she has been present -- she is an experienced police officer. She knows that you can't talk to jurors, she sat there and listened to the Court's instructions and knows

3

> that we don't interact with jurors period, first of all. Second of all, that she would be arrested in a place where she could have been seen, given the timing of when it occurred, is shocking to me.

(Cr. Doc. 66 at 3:4–5:24).

After individually questioning the jurors about what they had seen of the incident and their perceptions of it, the court granted Mr. Craig's motion for a mistrial, explaining,

> . . . I keep coming back to how difficult I think it would be for jurors to totally disregard what they saw and how it could subconsciously affect the credibility that they would give to Ms. Jackson's testimony, to have seen what at least two of them, I think, perceived as . . . her being arrested.

(Cr. Doc. 66 at 73:17–23).

Mr. Craig submits a declaration in which he describes these events from his perspective. He recounts watching AUSA Athanas confer with ATF agent Tucker immediately after the court recessed for lunch on the second day of the first trial. He declares that jurors and some witnesses left the courtroom while Mr. Craig, the attorneys, Agent Tucker, and Birmingham police officers serving as witnesses remained in the courtroom. Mr. Craig claims that Ms. Athanas, upon viewing information on a computer along with Agent Tucker, told Agent Tucker, "[G]o get her now!" (Civ. Doc. 13 at 10). He states that approximately five to six minutes later, the court dismissed the individuals remaining in the courtroom, and Agent Tucker and the police officers rushed to apprehend Ms. Jackson. Mr. Craig maintains that he informed his trial and appellate counsel of these events but that counsel did not argue at trial or on appeal that his second trial constituted double jeopardy.

Specifically, as to trial counsel, Mr. Craig maintains that Mr. Threatt told him that the conversation Mr. Craig overheard would not rise to the level of warranting a mistrial with

4

prejudice to retrial. Mr. Craig claims that Mr. Threatt replied, "you['re] not going to get a mistrial with prejudice, I don't think the judge will grant you that. So, let me do my job . . . ." (Civ. Doc. 13 at 11). Mr. Threatt apparently told Mr. Craig at the beginning of the second trial that he would not move the court to dismiss the second trial with prejudice because "based on his researching the matter, the law doesn't recognize double jeopardy where mistrial's [sic] are granted." (Civ. Doc. 13 at 13).

Mr. Threatt and attorney Shera Grant represented Mr. Craig during the retrial. Mr. Craig declares that at the beginning of the second trial, he pointed out to Mr. Threatt the lack of African-Americans in the jury pool, arguing, "I mean we should have half the jury pool consisting of black people." (Civ. Doc. 13 at 13). According to Mr. Craig, Mr. Threatt replied that one African-American was in the pool and that "it doesn't always work that way. . . . [let's] not get every one against us from the start, okay?" (*Id.*) After the second trial, a jury found Mr. Craig guilty of possessing a firearm as a convicted felon.

The court sentenced Mr. Craig to 70 months' confinement, which fell in the middle of the guidelines range of 63 to 78 months. Mr. Craig's Presentence Investigation Report calculated a base offense level of 20 under United States Sentencing Guidelines § 2K2.1(a)(4), because Mr. Craig had previously been convicted of a "controlled substance offense." (Cr. Doc. 47 at 6–7). Over Mr. Craig's objection, the court found that his conviction in Alabama Circuit Court for possession of marijuana in the first degree qualified as a controlled substance offense, as defined by the Sentencing Guidelines.

Represented by Katherine Luker, Mr. Craig appealed his sentence solely on the ground that his base offense level had been improperly calculated because his Alabama conviction for

5

first degree possession of marijuana did not qualify as a controlled substance offense under the Sentencing Guidelines. *See United States v. Craig*, 520 F. App'x 906, 907 (11th Cir. 2013); U.S.S.G. § 4B1.2(b) (defining a "controlled substance offense").The Eleventh Circuit affirmed Mr. Craig's sentence, holding that his Alabama conviction for unlawfully possessing marijuana qualified as a controlled substance offense under the Guidelines. *Craig*, 520 F. App'x at 909.

Mr. Craig recounts that prior to appeal, Ms. Luker told him that she could not appeal the double jeopardy issue because she had reviewed the record and did not think the issue was meritorious, and in any event, she believed that he had to raise ineffective assistance claims on collateral review instead of direct appeal. (Civ. Doc. 13 at 15). Ms. Luker also told Mr. Craig that she could not raise on appeal the issue of whether Mr. Craig was tried by a jury of his peers.

Mr. Craig filed this motion on June 2, 2014. The court denied Mr. Craig's motions for discovery and found this case ripe for summary disposition. Mr. Craig served his sentence and is now under supervised release. Thus, he is still "in custody" for purposes of § 2255. *See United States v. Brown*, 117 F.3d 471, 475 (11th Cir. 1997).

## II. DISCUSSION

Mr. Craig attacks his sentence on four grounds, all of which allege ineffective assistance of counsel.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail on a claim of ineffective assistance of counsel, Mr. Craig must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness; *and* (2) he suffered prejudice because of that deficient performance. *See id.* at 684–91.

6

Deficient performance exists when counsel acts "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The test is not what the best—*or even a good*—lawyer would have done, but "whether *some reasonable lawyer* at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (emphasis added).

The court presumes petitioner's counsel acted reasonably. *Strickland*, 466 U.S. at 690; *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999) ("[W]here the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."). To overcome that presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Conclusory or unsupported allegations cannot support an ineffective assistance of counsel claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (finding "unsupported allegations, conclusory in nature and lacking factual substantiation" to be an insufficient basis for relief); *see also Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing [*Strickland*] presumption.").

Prejudice arises if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Merely showing that counsel's error had "some conceivable effect on the outcome of the proceeding" cannot establish prejudice. *Id.* at 693.

### A. Trial

Mr. Craig claims that his trial counsel provided ineffective assistance by failing to investigate and object to his second trial as violating the Double Jeopardy Clause of the Fifth Amendment. He alleges that prosecutorial misconduct caused the mistrial; that "when Federal Agents at trial instructed jury members to 'actually' detain one of the defendant's witnesses from leaving the courthouse during recess, it intentionally caused a mistrial in the first trial."[2] (Civ. Doc. 1 at 15 ¶ 33).

"The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606 (1976). "Ordinarily, when a defendant successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution." *United States v. Shelley*, 405 F.3d 1195, 1200 (11th Cir. 2005) (quoting *United States v. Scott*, 437 U.S. 82, 93 (1978)) (emphasis omitted). But

> where a defendant in a criminal trial successfully moves for a mistrial, . . . . the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the [governmental] conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Oregon v. Kennedy*, 456 U.S. 667, 679 (1982).

The court finds that trial counsel did not provide ineffective assistance in declining to investigate and object to the retrial as being in violation of the Double Jeopardy Clause. First of

---

[2] Many of Mr. Craig's allegations refer to the conduct of the arresting agents/officers rather than of the prosecutor, but he does claim that the Government directed the agents; for example, he states that "under the circumstances of this matter, it was obvious that a veteran AUSA such as Enid D Athanas would have consulted the Court first prior to instructing its agents to arrest Ms Jackson with the aid of Jurors." (Civ. Doc. 1 at 38).

all, according to Mr. Craig's own allegation, counsel did investigate the legal issue, and concluded that such an objection would be meritless: trial counsel Mr. Threatt told Mr. Craig that "based on his researching the matter, the law doesn't recognize double jeopardy where mistrial's [sic] are granted." (Civ. Doc. 13 at 13). And that is true—unless the government "intended to 'goad'" him into moving for the mistrial. *See Kennedy*, 456 U.S. at 677.

Mr. Craig has pointed to no evidence that the government intended to goad him into moving for a mistrial. In moving for a mistrial, Mr. Threatt questioned why the police had not notified courtroom staff "to keep the jury in the jury room until such a time as they got a call that they could be released." (Cr. Doc. 66 at 4:17–20). And the court, in granting the motion for a mistrial, did not suggest that prosecutorial misconduct was at issue; the court's concern was that jurors had inadvertently witnessed the incident and perceived that Ms. Jackson was being arrested, thus tainting their opinion of her credibility as a witness. In other words, the court and attorneys all attributed the incident to the conduct of the arresting agent and officers, not to prosecutorial misconduct.

Mr. Craig, in his declaration, states that the prosecutor, Ms. Athanas, told Agent Tucker —*outside the presence of the jury*—"[G]o get her now," and five or six minutes later, Agent Tucker and police officers rushed to apprehend Ms. Jackson. (Civ. Doc. 13 at 10). Even accepting his version as true, it does not establish that Ms. Athanas intended to provoke a mistrial, as required for Mr. Craig's retrial to violate the Double Jeopardy Clause. It strains credulity to infer that Ms. Athanas knew that jurors would see Agent Tucker and the officers detaining and later arresting Ms. Jackson. Mr. Threatt's conclusion that an objection to the second trial based on double jeopardy grounds would have been futile was not unreasonable. *See*

9

*United States v. Vallejo*, 297 F.3d 1154, 1162 (11th Cir. 2002) (citation omitted) ("In considering a motion for double jeopardy, the trial court should rely on the objective facts and circumstances of the particular case.").

Mr. Craig has not established that his attorneys' failure to object to his second trial on double jeopardy grounds or further investigate those grounds was unreasonable. His claim for relief based on trial counsel's failure to raise a double jeopardy argument fails.

**B.     Sentencing**

   1.     Guidelines Enhancement

Mr. Craig contends that his sentencing counsel's performance was constitutionally deficient because counsel failed to properly investigate and object to Mr. Craig's sentencing enhancement under U.S.S.G. § 2K2.1(a)(4). That section provides for a base offense level of 20 when a defendant unlawfully possessed a firearm "subsequent to sustaining one felony conviction of either a crime of violence *or a controlled substance offense* . . . ." U.S.S.G. § 2K2.1(a)(4) (emphasis added). Mr. Craig argues that the facts underlying that enhancement should have been found beyond a reasonable doubt by a jury, pursuant to the rule in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

Mr. Craig's characterization of the law under *Alleyne* is incorrect. *Alleyne* held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the *mandatory minimum* is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155 (emphasis added) (citations omitted). The Sentencing Guidelines, however, are advisory rather than mandatory, and so a sentencing

10

enhancement under the Guidelines increases only the *advisory*, not *mandatory*, guideline range for a particular offense. *See Beckles v. United States*, 137 S. Ct. 886, 895 (2017)("The Guidelines, however, do not regulate the public by prohibiting any conduct or by 'establishing minimum and maximum penalties for [any] crime.' Rather, the Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress.") (citation omitted). "[A] district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long as its findings do not increase the *statutory* maximum or minimum authorized by facts determined in a guilty plea or jury verdict." *United States v. Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014) (emphasis added).

Counsel is not ineffective for failing to make a meritless objection. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."). Because any *Alleyne*-based objection to the calculation of Mr. Craig's advisory guidelines range would have been meritless, Mr. Craig cannot demonstrate that trial counsel was ineffective for failing to make such an objection, and his claim for relief on that ground fails.

2. "Double Counting" of Prior Conviction

Mr. Craig argues that counsel was ineffective for failing to investigate and object to his prior marijuana conviction being "double counted," in that the court applied his conviction to enhance both his base offense level and his criminal history category. "[D]ouble counting a factor during sentencing is permitted if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." *United States v. Asante,* 782 F.3d 639, 647 (11th Cir. 2015). Under that standard, a prior felony

11

conviction may be used to enhance both the defendant's base offense level and his criminal history category. *United States v. Espinosa*, 534 F. App'x 899, 902 (11th Cir. 2013) (quoting *United States v. Adeleke*, 968 F.2d 1159, 1161 (11th Cir. 1992) ("[T]he Sentencing Commission 'clearly intended prior felonies to count against defendants under both the criminal history section and § 2L1.2.'")).

Like Mr. Craig's sentencing enhancement claim, this claim fails because a double-counting objection would have been meritless. *See Brownlee*, 306 F.3d at 1066. The Sentencing Commission intended for the court to enhance a defendant's base offense level under § 2K2.1(a)(4) for having a previous felony controlled substance offense, *see* U.S.S.G. §§ 2K2.1(a)(4), 4B1.2(b) (providing for an increase to the base offense level if the defendant had previously been convicted of a felony controlled substance offense); and it intends for the court to count a defendant's previous felony convictions in calculating his criminal history category, *see id.* § 4A1.1(a) (providing for an increase to the defendant's criminal history points if the defendant has previous felony convictions). Any objections would have been meritless.

Mr. Craig also claims that counsel was ineffective for failing to investigate and move for an appropriate downward variance under 18 U.S.C. § 3553(a). Section 3553(a), entitled "Factors to be considered in imposing a sentence," lists a number of factors the court may consider in determining a sentence, such as "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Mr. Craig does not identify on what grounds his counsel should have moved for a downward variance. Accordingly, this claim constitutes the kind of "[c]onclusory or

12

unsupported allegations [that] cannot support an ineffective assistance of counsel claim." *See Tejada*, 941 F.2d at 1559.

C. **Appeal**

Mr. Craig contends that his appellate counsel was constitutionally deficient in failing to (1) argue that his retrial violated the Double Jeopardy Clause of the Fifth Amendment; (2) argue that his trial counsel was ineffective for not objecting to his second trial; (3) argue that the makeup of the jury pool violated his Fifth Amendment rights; (4) argue that trial counsel was ineffective for failing to object to the makeup of the jury pool; and (5) "investigate or present the strongest issues available to Craig for his direct appeal and . . . preserve viable issues for collateral review." (Civ. Doc. 1 at 17 ¶ 43, 18 ¶ 45).

Mr. Craig's first two grounds rely on his argument that his retrial violated the Double Jeopardy Clause. This court has already found that it did not. Appellate counsel was not ineffective for failing to raise on appeal a meritless double jeopardy argument or for failing to challenge on appeal trial counsel's failure to raise a meritless double jeopardy argument. *See Brownlee*, 306 F.3d at 1066.

Mr. Craig's third and fourth grounds rely on the fact that only one African-American was in the jury pool for his second trial. Granted, under the Sixth Amendment, criminal defendants have "the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010).

> [T]o establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such

13

persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also Berghuis*, 559 U.S. at 319.

Mr. Craig has not alleged any facts that satisfy those requirements. All he has alleged is that the jury pool at his second trial included only one African-American. But even assuming that was enough to meet the first, or even the first and second, requirements of the test set out in *Duren*, it would not meet the third requirement that the "underrepresentation is due to *systematic exclusion* of the group in the jury-selection process." *Duren*, 439 U.S. at 364 (emphasis added). Mr. Craig has not identified any defect in the Northern District of Alabama's jury pool selection process. And the Eleventh Circuit Judicial Council approved the Northern District of Alabama's Jury Plan in 2006, well before Mr. Craig's retrial in 2012.

What's more, according to Mr. Craig's declaration, at his first trial his jury was made up of nine African-Americans, three Caucasians, and an African-American alternate juror, indicating that the jury pool selection process in the Northern District of Alabama does not systematically seek to exclude African-Americans. Finally, Mr. Craig declared that when he complained to his trial counsel, Mr. Threatt, that half of the jury pool should be African-American, Mr. Threatt responded that "it doesn't always work that way."

Mr. Craig has not demonstrated that the jury pool at his second trial was not a fair cross section of the community. As a result, appellate counsel was not ineffective for failing to raise claims challenging the composition of the jury pool or trial counsel's effectiveness for failing to challenge the composition of the jury pool. *See Brownlee*, 306 F.3d at 1066.

Finally, Mr. Craig's fourth ground does not identify what "strongest issues" his appellate counsel neglected to raise; accordingly, it is conclusory in nature and does not establish that appellate counsel acted unreasonably or that Mr. Craig suffered prejudice. *See Tejada*, 941 F.2d at 1559. Thus, Mr. Craig's claims of ineffective assistance of appellate counsel all fail.

## III. CONCLUSION

Mr. Craig has failed to demonstrate that his counsel at trial, sentencing, and/or appeal provided constitutionally deficient assistance in representing him during his criminal proceedings. Accordingly, he is not entitled to habeas relief. The court **WILL DENY** his motion to vacate, set aside, or correct his sentence. The court will enter a separate order consistent with this opinion.

**DONE** this 18th day of September, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE